C. C. MILLHISER, *et al.*, v. H. WILLARD, SON & COMPANY, *et al.*, Appellants.

**Nuisance.** Where a rendering establishment is so conducted for reasons inhering in the nature of the work as to become injurious and offensive to those living adjacent, they may enjoin its further maintenance though the general public is affected in the same manner as said private plaintiffs. Code, 3331.

*Appeal from Marshall District Court.*—HON. GEORGE H. CARR, Judge.

THURSDAY, DECEMBER 12, 1895.

Action in equity to enjoin the maintenance and for the abatement of a nuisance. There was a hearing on the merits, and a decree for the plaintiffs. The defendants appeal.—*Affirmed.*

*O. Caswell* for appellants.

*J. L. Carney* and *T. Brown* for appellees.

Robinson, J.—The defendants are co-partners, and, under the firm name of H. Willard, Son & Co., had, for some years prior to the commencement of this action, maintained a rendering establishment within the corporate limits of the city of Marshalltown, on premises which are particularly described. The plaintiffs own and occupy, in the same locality, other premises, including dwelling houses. The plaintiffs allege and the evidence shows, that for three years preceding the commencement of this action, the defendants had maintained on their premises large tanks, in which were habitually rendered the carcasses of hogs, cattle, and horses which had died from disease or accidental causes; that during the time

stated large numbers of such carcasses were transported to the establishment in different stages of decomposition, and there steamed, the fats extracted, and the residuum, called "tankage," disposed of by burying it in pits, hauling it on to land in the neighborhood, or shipping it to Chicago. Some hides and tallow were also treated on the place. It is contended by the appellants that carcasses were received only when frozen, in the winter season, or at other seasons but a short time after the animals had died, and before decomposition had become noticeable; that the carcasses were cut into pieces, placed in the tanks, covered with water, and sealed up so that no odors escape; that steam is then introduced into the tanks, and gases are drawn off through a pipe which opens into the firebox of the boiler, where the gases are consumed, and that no odors therefrom escape; that in warm weather carcasses unfit for rendering, and the tankage, are buried in pits, and noxious and disagreeable odors are thereby almost wholly prevented. There is much testimony which tends to support the claims of the appellants. Men who have been employed in the establishment testify strongly in support of those claims, their evidence tending to show that odors can seldom be discerned beyond the grounds occupied by the defendants. Officials of the city of Marshalltown to whom complaints were made visited the premises frequently, and testify, in substance, that the establishment was well conducted so far as they had observed, and that the odors therefrom were noticeable only a short distance away. These witnesses are corroborated by others. We are satisfied, however, by the testimony of numerous witnesses who live in the immediate vicinity of the premises, and of others who have passed them frequently, that the claims of the defendants are only in part well

founded. They intrusted the operating of the estab-
lishment to employes, and gave it but little personal
attention. At times it was so conducted as to give
but little ground for complaint, but at other times
carcasses in advanced stages of decomposition were
brought to the premises and there permitted to remain
until the stench emitted became intolerable. Pits
prepared for the tankage were partially filled, and left
so insufficiently covered that they were very offensive
to the neighborhood. Barrels of tankage were allowed
to stand near the building until their contents were
filled with maggots, and became disgusting to both
sight and smell. The atmosphere in the vicinity was
so contaminated by the causes which we have enumer-
ated as to affect most injuriously the comfort, and in
some cases the health, of the occupants of the houses
of the plaintiffs. The locality is one where manu-
facturing industries of various kinds are carried on,
and some of them at times produce offensive smells;
but they are clearly distinguishable from those caused
by the defendants, and are much more endurable. We
are satisfied that the rendering establishment of the
defendants, as they have conducted it, has been a
nuisance. It is not shown that it can be carried on in
any other manner. The defendants claim that they
have intended to so operate it as to give the least
offense possible, but that they do not know of any
changes for the better that can be made. It therefore
appears that the matters of which the plaintiffs com-
plain inhere in the business. The defendants have
not acquired any right to operate their works superior
to the rights of the plaintiffs. The latter are not
estopped by anything which they have done or failed
to do to assert the claim which they now make. Noth-
ing in the character of the business or demands of the
public requires that it be carried on in the premises
in question. Under the circumstances the district court

properly enjoined the defendants from operating their rendering establishment, and ordered its abatement as a nuisance. The injuries to which the continued operation of the works in question would subject the plaintiffs are of such a character as to entitle them to the relief granted, even though the general public may be affected in the same manner. Code, section 3331; *Harley v. Brick Co.*, 83 Iowa, 74 (18 N. W. Rep. 1000), and cases therein cited; *Chapman v. City of Rochester*, 110 N. Y. 273 (18 N. E. Rep. 88); *Seifried v. Hays*, 81 Ky. 377.

The conclusions we have expressed dispose of the controlling questions in the case. The decree of the district court is *affirmed*.