[No. 4757. Decided September 21, 1904.]

CHARLES R. WILCOX, *Respondent,* v. JAMES HENRY, *Appellant.*[1]

NUISANCE—SLAUGHTER HOUSE—SPECIAL INJURY—ENJOINED AT SUIT OF OWNER OF A DWELLING. The maintenance of a slaughter house and stock pens adjacent to the residence section of a city, and the suffering of the accumulation of offal, refuse, and decaying matter, in the conduct of such business, is a public nuisance that may be enjoined at the suit of the owner of a dwelling who shows special injury by reason of nauseating and offensive smells which taint the atmosphere and food in said house, rendering it unfit for habitation and depreciating its market value.

SAME—INTERMITTENT INJURY. The fact that the nuisance was intermittent and not continual is not ground for refusing equitable relief.

SAME—DECREE—CONSTRUCTION—SUPPRESSION OF BUSINESS. A decree enjoining, as a public nuisance, the maintenance of a slaughter house and restraining the defendant from conducting the business "to the injury of the plaintiff and other residents," is not objectionable as a suppression of the entire business, the evidence having shown that the objectionable features could be obviated by the installation of deodorizing machines, since the terms of the decree permit the conduct of the business if the noxious odors are obviated so as not to injure or annoy the plaintiff.

Appeal from a judgment of the superior court for King county, Tallman, J., entered July 20, 1903, upon findings in favor of the plaintiff, after a trial before the court without a jury, enjoining the maintenance of a slaughter house as a public nuisance. Affirmed.

*James B. Murphy,* for appellant. The plaintiff cannot maintain the action because the injury was not different in kind from that suffered by the public at large. *Carl v. West Aberdeen Land & Imp. Co.,* 13 Wash. 616, 43 Pac. 890; *Jones v. St. Paul etc. R. Co.,* 16 Wash. 25, 47 Pac.

[1]Reported in 77 Pac. 1055.

226; *Griffith v. Holman,* 23 Wash. 347, 63 Pac. 239, 83 Am. St. 821, 54 L. R. A. 178; *Tacoma v. Bridges,* 25 Wash. 221, 65 Pac. 186; *Fidalgo Island Canning Co. v. Womer,* 29 Wash. 503, 69 Pac. 1121; *Grigsby v. Clear Lake Water Co.,* 40 Cal. 396; *Jarvis v. Santa Clara etc. R. Co.,* 52 Cal. 438; *Payne v. McKinley,* 54 Cal. 532; *Bigley v. Nunan,* 53 Cal. 403; *Aram v. Schallenberger,* 41 Cal. 449; *Baltzeger v. Carolina Midland R. Co.,* 54 S. C. 242, 32 S. E. 358; *East St. Louis v. O'Flynn,* 119 Ill. 200, 10 N. E. 395; *Houck v. Wachter,* 34 Md. 265; *Thelan v. Farmer,* 36 Minn. 225, 30 N. W. 670; *Clark v. Chicago etc. R. Co.,* 70 Wis. 593, 36 N. W. 326; *Gundlach v. Hamm,* 62 Minn. 42, 64 N. W. 50. Under the evidence the injunction should have named and been confined to the appliances necessary to make the business inoffensive. *Ballentine v. Webb,* 84 Mich. 38, 47 N. W. 485; *Babcock v. New Jersey Stock Yard Co.,* 20 N. J. Eq. 296; *Green v. Lake,* 54 Miss. 540, 28 Am. Rep. 378; *Canal Melting Co. v. Columbia Park,* 99 Ill. App. 215. Under the circumstances of this case, the business ought not to be suppressed. *Huckenstein's Appeal,* 70 Pa. St. 102; *Tiede v. Schneidt,* 105 Wis. 470, 81 N. W. 826; *Eller v. Koehler,* 68 Ohio St. 51, 67 N. E. 89; *Riedeman v. Mt. Morris etc. Co.,* 67 N. Y. Supp. 391; *Ballentine v. Webb, supra; Richards' Appeal,* 57 Pa. St. 105; *Green v. Lake, supra; Lambeau v. Lewinski,* 47 Ill. App. 656. If the grievance can be remedied by science and skill, a court of equity will go no further than to require those things to be done. *Ballentine v. Webb, Green v. Lake, Tiede v. Schneidt, supra; Trulock v. Merte,* 72 Iowa 510, 34 N. W. 307; *Richards v. Holt,* 61 Iowa 529, 16 N. W. 595; *Miller v. Edison etc. Co.,* 68 N. Y. Supp. 900; *Seifried v. Hays,* 81 Ky. 377; *Minke v. Hopeman,* 87 Ill. 450; *Learned v. Hunt,* 63 Miss. 373; *McMenomy v. Baud,* 87 Cal. 134, 26 Pac. 795; *Fresno v. Fresno Canal etc. Co.,*

98 Cal. 179, 32 Pac. 943; *Callanan v. Gilman,* 107 N. Y. 360, 14 N. E. 264.

*R. E. Ferree, J. L. Waller,* and *R. W. Emmons,* for respondent, upon the point that defendant's business was both a public and a private nuisance, cited: Wood, Nuisances, 25; 2 Story, Eq. Jur., 225; *Morris v. Graham,* 16 Wash. 343, 47 Pac. 752, 58 Am. St. 33; *Georgetown v. Alexandria Canal Co.,* 12 Pet. 91; *Milhau v. Sharp,* 27 N. Y. 611, 84 Am. Dec. 314; *Wylie v. Elwood,* 134 Ill. 281, 23 Am. St. 676; *Lansing v. Smith,* 4 Wend. 9, 21 Am. Dec. 89; *Wesson v. Washburn Iron Works Co.,* 13 Allen 95, 90 Am. Dec. 186; *Norcross v. Thoms,* 51 Maine 503, 81 Am. Dec. 590; *People v. Gold Run etc. Co.,* 66 Cal. 155, 4 Pac. 1152; *White v. Flannigain,* 1 Md. 525, 54 Am. Dec. 668; *Whitfield v. Rogers,* 26 Miss. 84, 59 Am. Dec. 244; *Ankeny v. Fairview Milling Co.,* 10 Ore. 390.

MOUNT, J.—Respondent brought this action to restrain appellant from maintaining a nuisance. The nuisance complained of consisted of a slaughter house, rendering tanks, and stock pens, located in the city of Seattle, about a quarter of a mile distant from respondent's residence. On the trial of the case, the court made findings of fact in substance as follows: That respondent is the owner of certain lots and a dwelling house thereon, located on what is commonly known as "Beacon Hill," in the city of Seattle; that appellant is in possession of certain tide land lots of Elliott bay, lying immediately west of Beacon Hill, at the foot thereof, and about fifteen hundred feet in a southerly direction from respondent's dwelling; that appellant, at the time the action was begun, and for a long time before, was, and is now, operating and maintaining upon said tide land lots a slaughter house, stock pens, furnaces, vats, and other appliances for the manufacture of lard and tallow,

and for slaughtering large numbers of cattle, hogs, and sheep; that the said slaughter house and stock pens are kept in an unclean and filthy condition, and the appellant suffers and allows the offal, filth, and animal refuse matter to be collected, deposited, and remain in and about the said premises, until the said matter becomes putrid and decayed and fills the air with noxious and offensive odors; that appellant also throws and deposits offal, filth, and animal matter in the waters of Elliott bay, which said offal, filth, and animal matter are, by the action of the winds and tides, cast upon the shores and there decompose and cause nauseating and offensive smells and odors; that these nauseating, unwholesome, and offensive smells and odors so taint the air and food, in and about respondent's said dwelling house, that respondent's rest, and that of his family, is disturbed at night and his said dwelling house is thereby rendered unfit for habitation; that, by means of the various acts and things done as above found, and by reason of the location of said slaughter house and stock yards with reference to the said Beacon Hill, appellant pollutes and corrupts the atmosphere in and about the homes of the people living on Beacon Hill, and thereby deprives each and every of such homes and residents of pure air; that thereby the comfort and peace of every resident of said Beacon Hill is destroyed, and said homes rendered less enjoyable, and the market value of the property on said hill is, and has been, greatly depreciated; that said Beacon Hill rises from one hundred and fifty to two hundred feet above the said slaughter house and stock pens of appellant, is a beautiful place in which to live, is covered with homes, and is thickly populated. The court concluded, that the said slaughter house and stock pens were a public nuisance; that respondent suffered special injury therefrom, and has no adequate remedy at law therefor,

and that respondent was entitled to an order restraining the appellant from operating said slaughter house, and from slaughtering animals, rendering offal, lard or tallow, or depositing the offal or animal refuse matter in the waters of Elliott bay to the injury of appellant; and a decree was entered accordingly. From this decree defendant appeals.

It is first insisted by the appellant that the complaint upon its face shows that the nuisance, if any exists, is a public nuisance, and does not show that the respondent is specially injured thereby; and, second, that, if respondent was disturbed by noxious smells, such disturbance was intermittent and therefore not a cause for equitable relief. The findings of fact, as above stated, follow very closely the allegations of the complaint, and are in substance the same. For that reason it is not necessary to set out the complaint in more detail in this opinion. Section 3084, Bal. Code, defines a public nuisance as follows:

"A public nuisance is one which affects equally the rights of an entire community or neighborhood, although the extent of the damage may be unequal."

And the next section, in enumerating such nuisances, provides that:

"It is a public nuisance, . . . (7) To erect, continue, or use any building, or other place, for the exercise of any trade, employment, or manufacture, which, by occasioning noxious exhalations, offensive smells or otherwise is offensive or dangerous to the health of individuals or of the public."

Section 3087 provides that:

"Every nuisance not included in the definition of section 3084 is private."

Section 3093 provides:

"A private person may maintain a civil action for a public nuisance, if it is specially injurious to himself, but not otherwise."

There can be no doubt that the nuisance alleged in the complaint, and shown by the evidence, is a public nuisance. The right of the respondent to restrain it, therefore, depends upon whether the allegations of the complaint and the facts proven show that respondent is specially injured thereby. The substance of the allegations of the complaint upon this point is that the filthy pens, the offal, and the refuse matter, made by appellant in the conduct of his business, cause obnoxious, nauseating, and offensive smells, which taint and corrupt the atmosphere and food in and about respondent's dwelling, so that said dwelling house is thereby rendered unfit for habitation, and the value of the property on Beacon Hill depreciated. These allegations, it seems to us, bring the case clearly within the rule of special injury. The rule upon this question is stated in Wood, Nuisances (3d ed.), at §§ 668, 669, as follows:

"The general doctrine is, and may be regarded as the well-settled rule in courts of law and equity, both in this country and England, that for damages arising from a purely public nuisance, that is, one whose effects are common to all, producing no special or particular damage to one, as distinguished from the rest of the public, there can be no redress except by indictment or information in equity at the suit of the attorney general or other proper public officer."

"By common injury is meant an injury of the same kind and character, and such as naturally and necessarily arises from a given cause, but not necessarily similar in degree, or equal in amount. If the injury is the same in kind to all, it is a common injury, although one may actually be injured or damaged more than another. To illustrate, we will take the case of a slaughter house erected upon a public street. To all who come within the sphere of its operation

or effects, it is a nuisance, and offends the senses by its
noxious smells. It is a common nuisance in such locality,
and in its general effects produces a common injury. But
to those living upon the street and within its immediate
sphere, it is both a common and a private nuisance. Com-
mon in its general effects, but private in its special effects
upon those living there. To the public generally it pro-
duces no injury except such as is common to all; but to
those owning property in its neighborhood, or residing
there, it produces a special injury, in that it detracts from
the enjoyment of their habitations, produces intolerable
physical discomforts, and diminishes the value of their
premises for the purposes to which they have been de-
voted."

See, also, *Ross v. Butler,* 19 N. J. Eq. 294, 19 Am. Dec.
654. In the case of *Ingersoll v. Rousseau, ante,* p. 92,
76 Pac. 513, which was a case where the nuisance com-
plained of was a bawdy house located on a lot adjacent to
plaintiffs' residence, in discussing the question of special
injury, this court said:

"The respondents suffer, not only all the inconveniences
the general public suffers because of the maintenance of the
nuisance, but in addition thereto, they are compelled to
become witnesses to the boisterous and indecent conduct of
the inmates of the houses, and listeners to the loud and un-
seemly noises made by them and their dissolute companions.
The injury caused the respondents by these conditions is
clearly special, and different in kind from that suffered by
the general public, who are not compelled to be either such
witnesses or listeners."

We also held in that case that a private party may enjoin
a public nuisance by suit in equity, where such party
suffers a special injury. The legal principles involved in
that case are the same as those involved here, and must con-
trol. The complaint, we think, stated a cause of action.

To the point that the nuisance complained of was inter-
mittent, and therefore not a cause for equitable relief,

appellant makes no argument, but cites the case of *Farrell v. New York Steam Co.,* 53 N. Y. Supp. 55. That case does not support the appellant. It was there held that the things complained of did not arise from the negligence of the defendants, and did not amount to a nuisance, and, for that reason, it was held that equity would not restrain the operation of defendants' steam plant. In the case at bar, the injury to respondent is caused by a nuisance, the result of negligence and carelessness on the part of the appellant.

"The fact that this nuisance is not continual, and that the injury is only occasional, furnishes no answer to the claim for an injunction." *Campbell v. Seaman,* 63 N. Y. 568, 583, 20 Am. Rep. 567.

The other questions presented by the appellant are to the effect that the findings, conclusions, and decree of the court are not in accordance with the evidence. This has necessitated a careful examination of all the testimony in the case, and we are satisfied therefrom that the findings, conclusions, and decree are justified, and are in accord with the preponderance of the evidence, the great weight of which is to the effect that the appellant's stock pens are permitted to become and remain in a filthy condition; that they are not cleaned regularly when in use, and emit noxious odors continually; that offal was frequently cast into the bay and floated to shore, or was deposited on the tide flats, and there became putrid. The appellant himself testified that offal was thrown into an open vat, and frequently remained there, sometimes for two or three days, until the vat was full enough, when it was finally cooked. It clearly appears that, when this stuff was cooking in this open vat, it emitted nauseating odors which could be detected more than a quarter of a mile away; that this odor was so great and offensive that respondent's dwelling was unfit for habitation.

It is true that there was evidence to the effect that these noxious odors might be dispensed with by cleanliness, and by the installation of deodorizing machines and appliances. During the progress of the trial, when this evidence was being introduced, the court continued the trial of the cause for six months to allow the appellant to install such machinery or appliances to render his slaughter house, etc., inoffensive. When the trial was resumed, at the end of this period, it was shown that effective deodorizers had not been installed, that there was little or no abatement of the nuisance, and the filth was allowed to accumulate and give off its offensive odors as before. In fact, the appellant manifested little regard for the rights of those living near his slaughter house.

Appellant also complains that the decree suppresses appellant's entire business, while the testimony shows that the offensive odors were emitted from an open tank in which offal was kept and cooked, and that the suppression of the use of this tank alone is all that was justified. It is true that the evidence shows that the most offensive odor, and the one most readily traced, was emitted from this tank when materials were being cooked in it. But the evidence also shows that there were other odors, such as those arising from heads and hides of animals which were permitted to become putrid, and from offal which was kept on hand for a time, and from the filthy stock pens and tallow rendering vats, and from refuse matter which was thrown into the bay. All these contributed to aggravate the nuisance. The evidence, we think, fairly shows that, by the installation of proper appliances and by constant care and cleanliness, all these odors may be obviated; but, until the appellant can and does suppress all these noxious odors, he certainly should not be permitted to

operate his plant in that locality. The decree does not necessarily abolish appellant's business. It does restrain appellant from conducting the business, and from permitting others to conduct it, "to the injury of the plaintiff and other residents." If the appellant obviates all the noxious odors complained of, and thereby so conducts the business as not to injure or annoy the respondent, he is permitted under the decree to do so; otherwise the business should be suppressed.

The judgment appealed from accords with our views, and is affirmed.

FULLERTON, C. J., and DUNBAR and ANDERS, JJ., concur.