[No. 15795.   Department Two.   September 3, 1920.]

WILLIAM GRANT, *Respondent*, v. WILLIAM ROSENBURG
*et al.*, *Appellants*.[1]

NUISANCE (19)—OPERATION OF SLAUGHTER HOUSE—ABATEMENT—
EVIDENCE—SUFFICIENCY. A nuisance in the operation of a slaughter
house and fertilizing plant warranting its abatement is sufficiently
shown where it appears that foul odors were emitted which spread
over the adjoining property, causing discomfort and nausea to
persons residing there, that it could not be operated without the
emission of odors in some degree, and that its operation interfered
with the comfort and health of the residents and greatly depreci-
ated the value of all property in the vicinity by rendering it unfit
for small suburban homes for which it is most suitable.

SAME (23)—OPERATION OF SLAUGHTER HOUSE—ABATEMENT. The
fact that the business of conducting a slaughter house and fertilizing
plant is a lawful one, and that it cannot be carried on without the
emission of odors in some degree, thereby necessitating an abandon-
ment of the business itself if abated as a nuisance, is not a valid
objection, since the business may lawfully be conducted at any place
where similar businesses are conducted, or upon property large
enough to confine the objectionable odors thereto, and where not
interfering with the use or enjoyment of other property or de-
stroying its value; but such business may not be conducted at any
or all places merely because it is lawful.

SAME (23)—INJUNCTION—RELIEF AWARDED—SUPPRESSION OF BUSI-
NESS. Though a court of equity will not usually enjoin the oper-
ation of a legitimate business carried on at a proper place, because
of the manner of its operation, but will first require the cause of
the grievance to be corrected, it will abate the operation of a
slaughter house and fertilizing plant located in a residential dis-
trict where it must necessarily cause injury to adjoining property

[1]Reported in 192 Pac. 889; 196 Pac. 626.

owners, it being impossible to operate such plant without the emission of odors therefrom.

HOLCOMB, C. J., dissents.

### ON REHEARING.

NUISANCE (23)—SLAUGHTER HOUSE—REMEDIES—DECREE. Where the operation of a slaughter house and fertilizing plant has been enjoined as a nuisance, by reason of noxious odors arising therefrom, and evidence had been introduced to show that appliances could be obtained to eliminate these odors, which arose from the fertilizing plant and not from the slaughter house, it follows, that before an order might issue to destroy the plant, a reasonable time and opportunity should be given to obviate the noxious odors.

Appeal from a judgment of the superior court for King county, Davidson, J., entered October 11, 1919, upon findings in favor of the plaintiff, in an action for an injunction, tried to the court. Affirmed.

*Ryan & Desmond,* for appellants.

*Shorett, McLaren & Shorett,* for respondent.

FULLERTON, J.—The appellants, who were defendants below, together with one S. W. Ammer and one Ralph Broggi, own and conduct a slaughter-house and meat-packing plant, located in King county near the southern boundary of the city of Seattle at the place where the Des Moines highway crosses the same. Connected with the packing plant and as a part thereof, the appellants also conduct a fertilizing plant. In this plant parts of the slaughtered animals which would otherwise be waste are worked into a fertilizing product. The plant was started sometime in the year 1916. It had a small beginning, but was developed into a plant of considerable size and capacity by its originators, who sold to the appellants in the early part of the year 1919. After the appellants acquired the plant they greatly improved it, expending in betterments from ten to fifteen thousand dollars.

The respondent owns a five-acre tract of land lying to the west of the appellants' plant, and some one thousand feet distant therefrom, on which he makes his home. He acquired the property eleven years prior to the trial, and has resided on it continuously since the construction of the appellants' plant. The tract is somewhat highly improved, and but for the presence of the appellants' plant has a value variously estimated to be between ten thousand and fifteen thousand dollars. The land surrounding the plant and the respondent's property was platted some years ago into five-acre tracts. The tracts lying to the south of the respond- · ent's property are similar in character thereto and are desirable as residence property. Those lying to the north extend into the valley of the Duwamish river and are more suitable for gardening than dwelling purposes, and are occupied principally by Italian and Japanese market gardeners. The region is somewhat sparsely settled, although since the construction of the highway mentioned, in 1915, which made the land more accessible, demand for it for residence purposes has steadily increased. There is no plant similar in kind and character to that of the appellants in the vicinity.

In July, 1919, the respondent instituted the present action to abate the appellants' plant as a nuisance. He alleged in his complaint, and his evidence was to the effect, that the plant emitted intense and noxious odors, permeating and polluting the air in calm weather for a distance around the plant of one-half mile or more, and when the wind was blowing, for a much greater distance in the direction of the prevailing wind; that these odors had increased in intensity as the business of the plant increased, that they were present at all times, but were worse when the fertilizing plant was in operation, becoming at times so bad as to cause

nausea and vomiting. These conditions, it was further testified, had practically destroyed the respondent's property as residential property—indeed the wife of the respondent testified that they must abandon it as a place of residence, if no relief from the intolerable odors could be obtained—and had greatly depreciated its value. Other resident owners testified to like conditions with reference to their own property, and nonresident owners and agents of such owners testified to their inability to make sales of property because of the proximity of the plant and the odors emanating therefrom. The evidence of the respondent also tended to show that the plant itself was not equipped with the best modern appliances; that the fumes arising from cooking and drying the waste products of the slaughtered animals in the process of making the fertilizer was suffered to escape into the air, whereas it should be cared for in some other manner; that the septic tank, inserted for the purpose of cleaning and purifying the wash-waters used in and about the place where the animals are slaughtered and the cooling and cutting rooms, was either insufficient in size or improperly equipped, in that much animal matter escaped therefrom into a creek which flowed through the premises, where it attracted maggot-flies, dried on the banks, and caused an intolerable stench.

There was evidence from the other side to the effect that the respondent's witnesses had exaggerated the conditions; that, while the plant emitted odors, they were not of the repulsive and nauseating character described by the respondent and his witnesses—some of the witnesses testifying that they lived in even closer proximity to the plant than does the respondent, and that they suffered no ill effect or annoyance therefrom. Certain of appellants themselves testified that their

plant was modern, equipped with modern appliances, was kept clean and sanitary, and emitted no odors not usually emitted from plants of like kind where live stock is kept and slaughtered and the waste products therefrom were cooked and dried in the process of reducing it to a fertilizing agency. They denied that animal matter escaped from the plant into the creek, and sought to show that the district in which the plant was situated was more of a farming and gardening district than it was residential.

The trial court found the facts to be in accordance with the respondent's contentions; found that the plant was located in a residential district; that it could not be so operated as to do away with obnoxious and nauseating odors; that its operation interfered with the comfort and health of the neighboring residents, and greatly depreciated the value of all property in its vicinity. As matter of law, the court concluded that the respondent was entitled to a decree restraining and enjoining the appellants from operating the plant at its present location, or any other location in its vicinity; were entitled to a decree declaring the plant to be a nuisance, and to a decree abating it as such. A decree was entered in accordance with the findings and conclusions, and the present appeal is prosecuted therefrom.

The appellants first question the sufficiency of the evidence to justify the findings. But on this question there is hardly room for doubt. That there is emitted from the plant almost constantly foul and nauseous odors which spread over the adjoining property, causing at all times discomfort, and often-times nausea and vomiting, to the persons residing on such property, is abundantly proven. It is abundantly shown also that these conditions have greatly depreciated the value of

the surrounding property, because rendering it unfit for small suburban homes, the purposes for which it was most suitable.

But the appellants argue that the business in which they are engaged is lawful, that it cannot be carried on without the emission of odors in some degree, and that, if this is a sufficient reason for abating the business as a nuisance, the business itself must necessarily be abandoned. But the answer is not difficult. The appellants may lawfully conduct the business anywhere if they will acquire a sufficient area so that the odors arising therefrom will be confined to their own property; or they may conduct it at such places where businesses of like kind are usually carried on—where the conduct of the business is not to drive people from their homes, or to depreciate or destroy the values of their property. But businesses of this sort may not be conducted at any place or at all places merely because it is lawful. The appellants will not themselves contend that they can, without right or permit, invade physically their neighbors' property, and thus render it useless to such neighbors, and there can be no difference in effect between a physical invasion which destroys property and an invasion by a permeating substance which has a like effect.

There was evidence introduced in the record to the effect that appliances could be installed and improvements made in the plant which would greatly ameliorate the conditions of which complaint is made, though perhaps not doing away with the odor entirely. Based on this evidence, the appellants contend that the decree of the court is too sweeping and drastic; that the operation of the plant should not be suppressed entirely at this time, but that they should be permitted to install these appliances and make the improvements, and that

the operation of the plant should be suppressed only if the changes proved unavailing.

It is true that a court of equity will not usually enjoin the operation of a legitimate business carried on at a proper place, because of the manner of its operation, no matter how serious may be the grievance caused thereby. In the first instance, at least, it will require the cause of the grievance to be corrected, and will enjoin operation perpetually after it is proven that no application of science or skill can afford a remedy, or that the owners cannot be induced to conduct it properly. But there are certain businesses, of which slaughter-houses and fertilizing plants are examples, which from their very nature cannot be carried on except in more or less isolated places. No matter how scientifically the plants may be constructed or how hygienically they may be operated, they emit odors nauseating to the great body of mankind, and few people will reside or stay within the reach of these odors unless some overweening cause compels them so to do. For these reasons, courts will not permit their installation in residence districts, nor in districts where people are compelled to congregate in the pursuit of their ordinary avocations, nor on such a restricted area that their operation must of necessity render valueless to its owners abutting and adjacent property. *Sic utere tuo ut alienum non laedas,* is a maxim of the common law. Under the principle it announces, a proprietor cannot be permitted to convert his property into a nuisance to the detriment of other proprietors.

Within these principles, we cannot think the court erred in its decree. Nothing is shown or suggested which would so improve the plant as to prevent the annoying and noxious odors which must necessarily emanate therefrom from escaping onto the adjoining

property.   This is an invasion of the property and something to which the owners ought not to be compelled to submit, whatever use they may make or desire to make of their property.   But we agree with the trial court that this is a district suitable primarily for residential purposes, that property therein has its chief value because it is so, and that its growth is being retarded because of the location and operation of the appellants' plant.   In other words, the plant is located at a place where it must necessarily cause injury to the adjoining property owners, and that it is thus a nuisance which they are entitled to have abated.

The decree is affirmed.

MOUNT, TOLMAN, and BRIDGES, JJ., concur.

HOLCOMB, C. J. (dissenting)—In my opinion, the decree should merely be modified so as to require the appellants to abate the nuisance by installing such apparatus and appliances as will destroy the noisome matter.   Injunction to repress a lawful business is the harshest remedy available and should be used discreetly and sparingly, and a nuisance abated, when possible, without restraining the business.

I therefore dissent from the result reached herein.

ON REHEARING.

. [*En Banc.* March 24, 1921.]

MOUNT, J.—After the departmental decision was filed in this case, a petition for a rehearing En Banc was granted and the case was reargued.   The judgment appealed from restrained the appellants from conducting or operating their slaughter house and fertilizing plant and abating the plant as a nuisance by reason of noxious odors arising therefrom.   A majority of the court upon this rehearing are of the opinion that the order appealed from goes farther than neces-

sary and that the trial court should have given the appellants an opportunity to avoid the noxious odors, as was done in the case of *Wilcox v. Henry,* 35 Wash. 591, 77 Pac. 1055.

Upon the trial of the case, Dr. Sparling, the county health officer for King county, was called as a witness for the respondent. After testifying that the odor surrounding the place came from the rendering fats of the fertilizing plant, then in answer to the question, "Do you know of any way whereby that could be eliminated?" answered as follows:

"Well, there are two methods that are used to eliminate this smell, and one of them is by having the odor, when it is dumped, pass through condensers, condensers which are made for this purpose, and in that way the odor is condensed there and liquified and passes off with the other drainage, and any fat that is left in there, in the condenser, is taken out of the condenser and sold. Another way is by a tall, superheated flue. After the odor passes up this flue it passes into a jet of burning oil, and in this way the odor, which is more or less gases, are all carbonized and practically all the odor is eliminated. Q. Are there appliances of that kind manufactured, doctor, do you know, especially for this purpose? A. Yes."

So it is apparent that there is evidence in the record tending to show that the noxious odors may be eliminated. It follows that, before an order may issue destroying the plant of appellants, a reasonable time and opportunity should be given to the appellants to obviate the noxious odors.

A majority of the court is further of the opinion that the complaint, as well as the evidence, shows that the odors arose from the fertilizing plant and not from the slaughter house, and that the plant is not located in a residence section but is in a surburban district where the nearest dwelling is three hundred yards

away and the land surrounding is platted into five acre garden tracts.

For these reasons, the judgment appealed from is reversed and the cause remanded with directions to the lower court to grant the appellants ninety days time within which to avoid the noxious odor, the appellants to recover their costs of this appeal.

PARKER, C. J., MAIN, HOLCOMB, TOLMAN, MACKINTOSH, BRIDGES, and MITCHELL, JJ., concur.