## GEORGE E. FAY vs. EDWARD W. WHITMAN.

In an action for disturbing the use of the plaintiff's dwelling-house by stenches arising from the defendant's slaughter-house and in the removal of filth therefrom, the judge instructed the jury, in substance, that, while no liability results from those occasional or periodical exhalations which arise from such removals of filth as usually become necessary from the occupation of lands for business or domestic use, yet when the nature of the occupation renders such removals unusually frequent, or such exhalations permanent or frequent, an action will lie for the injury occasioned thereby to another in the enjoyment of his own premises; refused prayers of the plaintiff for instructions which would hold the defendant liable for rendering the air of the plaintiff's premises impure in any degree; and also refused to rule that the trade of slaughtering animals " is *primâ facie* a nuisance to those dwelling near, and should only be exercised in places remote from any habitation." *Held*, that the plaintiff had no ground of exception.

In an action for disturbing the use of the plaintiff's dwelling-house by stenches arising from the defendant's slaughter-house, the testimony of the occupants of other dwelling-houses, situated at a greater distance from the slaughter-house, that they were disturbed in their houses from the same cause, is competent to show the existence of the nuisance, although incompetent on the question of damages.

TORT by a landowner in Westborough against the owner of adjoining land for causing and maintaining noxious stenches at intervals from June 5, 1865, to the date of the writ, June 8, 1866.

At the trial in the superior court, before *Rockwell*, J., it appeared that on the plaintiff's land there was a dwelling-house which he occupied with his family during the period in question; and, on the defendant's land, at a distance of one hundred and twenty-five feet from this dwelling-house, there was a barn thirty-six feet long, with a pen of the same length adjoining, in which barn the defendant during that period slaughtered from thirty to fifty calves weekly, and kept in the pen constantly from five to twenty hogs; that " at certain times during said period the defendant removed from the slaughter-house and the said pig-pen such quantities of filth, manure and offensive matter that there arose from the same very offensive smells and odors, which so came into and around the house of the plaintiff that his occupation of the same was thereby rendered disagreeable and uncomfortable ; " and that there arose from the barn and the pen, as often as on two or three days cf each week in every

month, except the winter months, during the whole period, noxious smells, which disturbed the plaintiff in a similar manner in his occupation of his dwelling-house.

" The plaintiff offered to prove by certain persons who resided at a greater distance from the slaughter-house and pig-pen than he did, that in their houses, as often as two days in a week during all but the winter months which occurred during the time covered by the declaration, there came from said slaughter-house and pig-pen into and around their residences noxious and offensive smells and odors, which were exceedingly disagreeable to them and rendered the occupation of their residences by them uncomfortable. The evidence was objected to by the defendant, decided inadmissible, and ruled out."

The judge instructed the jury as follows: "1. The plaintiff had a right to occupy his house with the power to introduce pure air into it from the atmosphere surrounding it; and this right may be infringed upon. 2. This right may be affected so slightly that there is no appreciable injury to it; or it may be affected to a degree that does substantially and appreciably injure a valuable right, viz: his right of living in his house in ordinarily pure air around it and coming into it from external sources. 3. Smells arising from occasional or periodical necessary removals of filth and manure, periodically done, are not actionable, unless the nature of the business is such that such removals are more frequent than in ordinary business. 4. If they arise permanently or frequently, from a business or occupation, they may be actionable upon the principle before stated. 5. The injury must not be fanciful, but must be real; affecting not persons peculiarly fastidious, but irritating and annoying to persons ordinarily susceptible, to be actionable. 6. If one is thus injured by his neighbor's slaughter-house, he may recover the damages which he proves affirmatively upon the whole evidence."

The plaintiff objected to rulings 3 and 4; and in place of rulings 1, 2, 5 and 6 requested the judge to rule " that, if a person keeps his hogs or other noisome animals, or sets up and exercises any offensive trade, so near to the house of another

that the stench therefrom incommodes him, or is offensive or dis-agreeable to his senses, or renders the enjoyment of his life and property uncomfortable, such injuries are a legal ground of damage; and that pure air is an indispensable requisite to every dwelling, and any infringement on the same by any one, to any degree, is a legal cause of action." He also requested rulings " that the trade of slaughtering animals, though a lawful and necessary trade, is *primâ facie* a nuisance to those dwelling near, and should only be exercised in places remote from any habitation;" and " that, if there was no other person than the plaintiff who was in any way affected by the slaughter-house and its appendages, that would not be any reason why the plaintiff should be prevented from recovering damages for the injury from said slaughter-house." All these requests the judge refused; the jury returned a verdict for the defendant; and the plaintiff alleged exceptions.

*P. E. Aldrich & A. G. Biscoe,* for the plaintiff.

*G. F. Verry,* for the defendant.

WELLS, J. The instructions given to the jury at the trial were sufficiently favorable to the plaintiff. The third instruction is somewhat obscure and ambiguous; but, when taken in connection with the others, the meaning of the whole is clear; to wit, that, while no liability results from those occasional or periodical exhalations that arise from such removals of filth as usually become necessary from the occupation of lands for purposes of business, or even domestic use, yet, when the nature of the business is such that removals become unusually frequent, or that such exhalations become permanent or frequent, an action will lie for the injury occasioned thereby to another in the enjoyment of his own premises. The instructions asked for by the plaintiff made no such discrimination. They required an immunity from any degree of impurity of air, which would be incompatible with the assemblage of men into communities. They were therefore rightly refused. The substance of all the prayers, except so far as obnoxious to this objection, was embraced in the instructions actually given.

The testimony, offered by the plaintiff, from other persons

residing in the vicinity, but at a greater distance from the slaughter-house than himself, appears to us to have been improperly excluded. It tended to show the existence, the character and the frequency of the offensive odors that came from the defendant's premises. It was not competent for the plaintiff to show that the property of other persons was injuriously affected by the cause of which he complained. But he might show the existence of the cause, by the testimony of any persons who had observed it, from any position, not peculiarly exposed to its influence.

If the proposed testimony was all included in one offer, the fact that a part was incompetent did not require nor warrant the exclusion of that part which was competent and proper for the consideration of the jury. Such testimony having been excluded by the court upon the objection of the defendant, the

*Exceptions must be sustained.*