## Wytheville.

PRUNER & HUBBLES v. PENDLETON AND OTHERS.

July 28.

Absent, *Moncure*, P., and *Anderson*, J.

A slaughter-house in a city or town is not a nuisance *per se*, but only *prima facie* such; and consequently the burden of proof is upon those who engage in the business, when complaint is made, to show that it is not a nuisance; that it does not produce what is offensive to the senses and what renders the enjoyment of life and property in the neighborhood uncomfortable.

On the 15th of August, 1879, W. C. Pendleton, trustee for his mother, Mrs. N. T. Pendleton, and in his own right, presented to the judge of the circuit court of Washington county a bill praying an injunction against Thomas S. Pruner, James Hubbles and others to restrain them from using a slaughter-house which had been erected in the neighborhood of the plaintiffs' residence in the town of Marion, and which, it was alleged, constituted an intolerable nuisance to themselves and families. An injunction was awarded, not to prevent the defendants from slaughtering their stock, but in effect requiring them so to conduct their business as to avoid the creation of a nuisance, with liberty to the plaintiffs, if the injunction were not observed, to move for its extension to the restraint of slaughtering at all in said house.

Pruner & Hubbles answered the bill and denied its material allegations. Twenty-one depositions were taken on the part of the plaintiffs and thirty-six on the part of

the defendants. On the 13th of October, 1879, the cause came on to be heard upon the motion of the plaintiffs and on affidavits filed by the parties, and it appearing to the court that Pruner & Hubbles had used every practicable effort to prevent inconvenience to the plaintiffs from the use of the said slaughter-house, but that disagreeable odors, unpleasant sights and noises were unavoidably incident to the use of the slaughter-house, it was decreed that the injunction theretofore awarded be continued in force until on and after December 1st next ensuing, and that afterwards the defendants be wholly restrained, etc. From this decree and the preceding order an appeal and *supersedeas* were awarded by a judge of this court.

*F. S. Blair* and *R. H. Richardson,* for appellants.

*J. H. Gilmore,* for the appellees.

BURKS, J., delivered the opinion of the court.

The court is of opinion that there is no error in the orders and decrees appealed from.

Slaughter-houses in a city or town were once reckoned by the courts as nuisances *per se,* and they are still so classed in the opinion of the court in *Green* v. *Lake,* 54 Miss. 540; S. C. 28 Amer. Rep. 378, decided as late as 1877, and much relied on by the learned counsel of the appellants; but it is said, in a late work of merit, that the wonderful improvements wrought by science in all departments of life has shown that this position cannot now be upheld in reference to any trade, and that slaughter-houses are now regarded merely as *prima facie* nuisances. Woods on Nuisances, §§ 503, 504, and cases there cited. When erected and used in a city or town, the remark of Chancellor Walworth is the

most that can be said in their defence, that "it is *perhaps possible* to carry on the business of slaughtering cattle, to a limited extent, in such a manner as not to be a nuisance." *Catlin* v. *Valentine,* 9 Paige, 575, 576.

From the doctrine that such a trade or business in a city or town or place thickly populated is *prima facie* a nuisance, it results that the burden is upon those who engage in the business, when the complaint is made, to show that it is not a nuisance—that it does not produce that which is offensive to the senses and which renders the enjoyment of life and property in the neighborhood uncomfortable.

The slaughter-house of the appellants is within the corporate limits of the town of Marion, near the residences of many citizens, and within full view of and only 130 feet from the dwelling-house of Mrs. Pendleton, in whose behalf principally the bill was filed by her son and trustee W. C. Pendleton.

Laying out of view the personal grievances of W. C. Pendleton, the complaint of Mrs. Pendleton, in substance, is, that the groans and cries of the animals when being slaughtered, and more especially the offensive odors which issue from the slaughter-house and its surroundings, render it impossible to live in her house with any sort of comfort—that the slaughter-house is an intolerable nuisance and inflicts upon her an irreparable injury.

All this the appellants deny and introduce many witnesses to substantiate their defence. We do not propose to discuss this testimony, but two general observations may be made respecting it. 1. Many of the witnesses do not live in the immediate vicinity of the slaughter-house, and none of them (except, perhaps, one or two) as near as the residence of Mrs. Pendleton, and some of them only occasionally visited the slaughter-house. 2. The testimony (or the most of it), in its relation to the grounds of complaint, is negative in its character, and not necessarily inconsistent with the testimony on behalf of the appellee.

On the other hand, the witnesses for Mrs. Pendleton speak positively of matters that came directly under their personal observation—facts within their own knowledge—facts which constitute the nuisance charged—and they had the best opportunity to be informed and to know whereof they spoke.

It is established by the proof, and indeed conceded, that Mrs. Pendleton is a lady of truth and high respectability. In her deposition, speaking of the slaughter-house, she says, "It is offensive. Sometimes it is a great deal worse than at others. I can hear the fluttering and groaning of the animals very plainly. I can smell the offensive matter very distinctly in my room when the window is up. In hot weather it is so offensive that I cannot stay in there with the windows up. I could not stay in there at night without the windows being down in hot weather." In these statements she is fully corroborated by a number of witnesses, some of them inmates of the house and others visitors in her family. It is not necessary to repeat what they say. It is to be noted that the appellants examined no witness who was or had been an inmate of that house, or who had been in the habit of visiting there, and all who resided or had resided in the house or who were visitors there, and were examined by the appellee, concur in the statement of Mrs. Pendleton as to the odors and generally as to the noise in the slaughtering. And it is further shown that the odors continued after the injunction was granted as before, notwithstanding all the efforts of the appellants to guard against it, and the learned judge in the last order he made in the cause, after the lapse of nearly two months from the granting of the injunction, declared that the appellants "had used every effort practicable to prevent inconvenience to the plaintiff from the use of the slaughter-house in controversy, but that disagreeable odors, unpleasant sights and noises are unavoidably incident to the use of said slaughter-house."

In this view, upon the evidence in the record, we concur, and are of opinion that the appellee is entitled to the relief prayed and granted.

It was argued that the offensive odors proceeded from the filthy condition of an alley between the lots of W. C. Pendteton and his mother. But it is shown that before the alley got into that condition and after it had been cleansed, the same odors existed.

An attempt was made to show that Mrs. Pendleton, or her trustee, consented to the erection of the slaughterhouse, and they were therefore estopped from making complaint. But the attempt failed. It was not proved that either she or her trustee ever gave any such consent. Some of the members of the family, it seems, were spoken to about the matter, and, it is said, gave their consent, but on condition that the slaughter-house should be kept clean— in other words, that it should not be suffered to emit noxious odors and thus become a nuisance. But even that qualified consent was never given either by Mrs. Pendleton or her trustee.

Nor was there any such acquiescence on her part or on the part of her trustee as to preclude either from the relief sought by the bill. In his deposition the trustee says that he made complaint to the lessors of the appellants, as to the condition of the slaughter-house, some time ago while it was in their use, and threatened them with an injunction, and that he always intended to take steps for the abatement of the nuisance. A. G. Pendleton states that he frequently advised his mother to take such steps, and an effort was made a short time before the bill was filed to induce the common council of the town to abate the nuisance, but they refused to interfere.

It would not have been error, we think, if the judge below had directed an issue to determine the question of nuisance. But he did not deem such an issue necessary to

Pruner & Hubbles v. Pendleton and others.

satisfy his own conscience. The trial would have been attended with delay and expense, while the nuisance in the meantime would have continued; and as neither party called for an issue, the presumption is that none was desired.

Upon the whole matter, we are of opinion that the decrees should be affirmed.

DECREE AFFIRMED.