CASE 59—EQUITY.—NOVEMBER 1, 1883.

## Seifried v. Hays, &c.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. An indictment is the proper remedy for a common nuisance in the absence of any special injury to the individual citizen.

2. Although five citizens residing near appellant's slaughter-house unite in the petition praying for the same relief, it does not follow that each may not have sustained a special particular injury.

3. If the nuisance complained of is such as to endanger the health of a party or his family by putrid carcasses or nauseous odors, and the

injury is irreparable, a court of equity will prevent the continuance of the nuisance.

4. Slaughter-houses are regarded *prima facie* as nuisances.

5. The chancellor has properly adjudged that appellant cease from using his slaughtered animals as to create a nuisance; not to stop his legitimate business.

JAMES R. W. SMITH AND JAMES HARLAN FOR APPELLANT.

1. Appellees must show that they suffer some particular injury distinct from that sustained by the public in general.

2. The injury must be real and substantial.

3. The production of a mere inconvenience resulting from the exercise of trade is not sufficient to make that trade a nuisance. (Barnes v. Hathorn, 54 Me., 124; 19 N. J., 294; 4 Eng. Law & Eq., 20; 20 N. J., 201; Louisville Coffin Co. v. Warren, 78 Ky.)

4. The nuisance and the injury must be clearly established. (Harris v. Thornberry, 7 Bush, 403; Dumesnil v. Dupont, 18 B. Mon., 800; Barr v. Stephens, 1 Bibb, 293; Cosby v. O. & R. R. R. Co., 10 Bush, 288; 2 Dana, 159; High on Injunctions, sec. 522; Wood on Nuisances, secs. 811, 812, 619, 792, 796, 798; Coke's Inst., 560; Chitty on Pl., vol. 1, 237; Gould's Pl., ch. 3, sec. 169; 5 Met., 8; 11 Humph., 406; 6 Ind., 223; 40 Ill., 81; 57 Penn. St., 274; 11 Fla., 143; 5 Ga., 15; 1 Duvall, 255; 23 Mich., 448; 8 Ind., 494; 70 Penn. St., 415; 20 N. J., 599; 9 Paige, 575; Rolle's Ab., 140.)

MUIR & HEYMAN FOR APPELLEES.

1. The nuisance is clearly established, was caused by appellant, and its abatement does not injure him.

2. A slaughter-house, when carried on in or near a town or city or public place, is *prima facie* a nuisance. (Wood on Nuisances, sec. 504; *Ib.*, sec. 505; 9 Paige's Ch'y, 575.)

3. Coming to a nuisance is no defense, no matter how long it has been continued. (3 Barb., 159; 1 Eng. Law Rep., Equity Cases, 56; 8 Phila. Rep., 10; 3 Rawle, 256; Greenleaf on Ev., vol. 2, 472; Ashbrook v. Commonwealth, 1 Bush; Wood's Law of Nuisances, secs. 707, 710, 727, 524; Louisville Coffin Co. v. Warren, 78 Ky., 400.)

4. It is not necessary to show that the odors are hurtful or unwholesome. (Wood on Nuisances, secs. 405, 496, 769, 505; 9 Paige's Ch'y, 755; 3 Barb., 157; Hahn v. Thornberry, 1 Bush, 403.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

Frank Seifried, the appellant, owns about eight acres of land near the boundary line of the city of Louisville, and outside of the city limits, upon which he erected a slaugh-

Seifried v. Hays, &c.

ter-house, and, for the period of near twenty years, has been engaged in slaughtering cattle and hogs on the premises.

In July, 1881, the appellees, Joseph Hays and others, instituted the present action, in which they allege that the appellant caused the intestines and other parts of animals slaughtered by him to be thrown in tanks, boxes, and in different places on his premises, and that the putrid and decayed flesh produced a foul and nauseous stench, such as poisoned the atmosphere for many feet in every direction from the premises of the appellant, embracing the dwellings of the appellees, thereby endangering the health of their families, and destroying the comfort of their homes. They charge that, unless restrained from this improper use of his slaughter-house and materials, the health of their families will be injuriously affected, and the comfort of their homes impaired, and irreparable injury done them. A temporary injunction was obtained against the appellant, restraining him from continuing the nuisance; and, upon the final hearing, the appellant was enjoined and restrained from keeping dead animals, or any parts of dead animals, on his premises in such manner as shall cause the offensive odor and stench complained of.

The answer filed by the appellant contains two paragraphs. The first is a general denial of the complaint made by the appellees, and the second defense is, in substance, that the appellant has been engaged in the business of slaughtering stock for many years, and was so engaged prior to the time at which the appellees erected their buildings, or moved near to his slaughter-house; that his business has always been conducted in a lawful way, and his establishment always clean, and emitting no vile or foul odors; that the

smell or stench connected with his business was no greater in 1881, the time of which appellees complain, than it had been during the entire period the appellees had lived near his premises, and that their acquiescence for many years in the manner in which he had conducted the business estops them from now molesting or interfering with the conduct of the establishment.

In determining the merits of this controversy, the court will also dispose of the question raised by the demurrer to the petition, the appellant insisting that the nuisance alleged, being a common or public nuisance, a private citizen cannot maintain the action without an averment that he has sustained some special injury.

The doctrine is well settled that an indictment is the proper remedy for a common nuisance in the absence of any special or particular injury to the individual citizen, and therefore, when a private person invokes the aid of the chancellor to restrain a public nuisance, he must show some special injury independently of that affecting the public generally.     (Barr v. Stephens, 1 Bibb; Cosby v. Owensboro and Russellville Railroad Company, 10 Bush; High on Injunctions, sec. 522.)

As many as five of the citizens living near the slaughter-house of the appellant have united in the petition asking the same relief, and while this may be evidence of the existence of a nuisance affecting all alike, it by no means follows that each may not have sustained a special injury. If the facts constituting the alleged nuisance are established, private injury affecting the health and comfort of the families living adjacent to the slaughter-house is the necessary consequence, and the fact that the injury is identical when applied to each family does not make it such a public nui-

sance as would deprive the citizen of his right to redress. If the nuisance is of such a character as to endanger the health of the party complaining, or that of his family, or such as renders his home uncomfortable, not by reason of the mere annoyance that the running of machinery or the ordinary conduct of the business in a legal way may cause; but when the injury is irreparable, such as the pollution of the air with putrid carcasses or noxious odors, rendering his home or place of business unhealthy, or producing physical discomfort to the particular person, a court of equity will interfere to prevent the continuance of the nuisance, and particularly in cases of this character.

"Slaughter-houses are regarded as *prima facie* nuisances, and their existence so near to dwellings as to impair their comfortable enjoyment, is an actionable injury." (Wood on the Law of Nuisances, sec. 504.)

The same author, in section 505, says: "That where originally built remote from the habitations of men or from public places, if they become actual *nuisances* by reason of roads being afterwards laid out in their vicinity, or by dwellings subsequently erected within the sphere of their effects, the fact of their existence prior to the laying out of the roads, or the erection of the dwellings, is no defense."

This court, in the case of Ashbrook against the Commonwealth, 1 Bush, in reviewing the doctrine applicable to this class of nuisances, in commenting on the decisions in cases where the *noxious trade* had been established prior to the erection of the dwellings by the parties complaining of the nuisance, and in which the party was allowed to continue his trade because it was legal before the dwellings were constructed, said that those authorities did not affect cases involving the public rights and demands of cities and their

populations, and cited the cases of the Commonwealth v. Upton, 6 Gray, and Brady v. Meeks, 3 Barbour, where it was held in both cases that the carrying on of an offensive trade for years, when there was no adjoining buildings, did not entitle the owner to continue it in the same place after houses have been built and roads laid out in the neighborhood.

The pursuit of a noxious trade, says this court, "is lawful so long as it does not interfere with the rights of the public, but when it does so interfere, it becomes illegal;" and while this applies to a prosecution by the state, the weight of authority leads to the conclusion that in the progress and growth of cities, where dwellings have been erected near slaughter-houses, and, by reason of the poisonous atmosphere emanating from such establishments, the dwellings are rendered unfit for comfortable habitation, the owners have their remedy against the party whose mode of business creates the nuisance.    (Greenleaf on Evidence, section 473; Dunn v. Valentine, 5 Met.; Howard v. McCoy, 3 Rawle.)

This court, in the case of the Louisville Coffin Company v. Warren, relied on by counsel for the appellant, held, that where a nuisance caused substantial injury to the dwellings around it, or affected the health of the residents, the chancellor would interfere to abate it.    That was an ordinary manufacturing establishment that could exist in the midst of a dense city population without affecting the inhabitants, save as they were annoyed by the noise of the machinery and the inconvenience arising from smoke, &c., that settled near the dwellings, and that was afterwards prevented by the use of proper appliances; but here is a case where a party is charged with continuing a nuisance that must neces-

sarily affect the health of the neighbors, or necessitate the abandonment of. their homes unless relief is given by the chancellor.   The question presented is, shall the right of these appellees to the enjoyment and comfort of their homes and families be held subordinate to the right of the appellant to continue a nuisance because his slaughter-house was erected before they purchased their homes?   This question has been answered by the judgment below, in the event the testimony sustains the complaint.   There is an apparent conflict in some of the statements made by the witnesses, but nearly all concur in the fact that the atmosphere in the vicinity of this slaughter-house was poisoned by this noxious vapor during the spring and summer of 1881.   There were other slaughter-houses and distilleries in the same locality, but the origin of this foul odor cannot be, or at least has not been, traced to any of them with that unerring certainty that it has to the slaughter-house of the appellant.   From that direction, and no other, seems to have come an odor that caused the closing of the doors and windows of the dwellings of these appellees during the evenings of the spring and summer of the year 1881, and, in fact, the doors and windows of the church near by had to be closed for the same reason; and such was the character of the stench, that it produced nausea, and must, if these appellees and their witnesses, twelve or fifteen in number, are to be believed, have rendered their houses almost uninhabitable.

That .the poisonous odor existed cannot be doubted, and the decided weight of the testimony is, that it originated from the slaughter-house of appellant.   The boiling of the skins and bones of dead animals in the tank used by him in his establishment must, without using the proper disinfectants, have caused the trouble complained of.   The

testimony is perfectly satisfactory that such was the case, and in this conclusion the court below has been sustained by several witnesses who have testified for the appellant. That a peculiar odor is attached necessarily to such an establishment must be conceded; but when kept cleanly, and the proper disinfectants used, there could not well be such a condition of things as could poison the atmosphere for several hundred feet distant from the building.

The chancellor has not undertaken to stop the business of the appellant, or to interfere in any other manner with the operations of his establishment than to prevent him from so using the slaughtered animals, or parts of them, as to create the offensive and poisonous odor of which appellees complain.

The judgment is therefore affirmed.