# STATE v. E. J. WOODBURY.

## October Term, 1894.

*Slaughter house.   Common law indictment for maintaining.
Nuisance.   Hypothetical question.*

1. A statute which is not manifestly repugnant to a former law
   will not be held to repeal it, unless it revises the whole
   subject-matter of the former law and is evidently intended
   as a substitute for it.

2. R. L., s. 3923, providing that the butchering business shall
   not be carried on without the written approval of the board
   of civil authority, and No. 82, Acts of 1892, empowering
   local boards of health to remove sources of filth, have not
   superseded the common law remedy by indictment for nui-
   sance in the maintaining of a slaughter house.

3. In order that a slaughter house may become an indictable
   nuisance it is not necessary that the odors therefrom should
   endanger the public health, if they are seriously offensive
   to passersby.

4. *Held,* that the hypothetical question put to the expert for the
   state was proper, although it did not refer to all the evidence
   as to the results from the condition of things shown.

Indictment for nuisance in the maintaining of a slaughter
house.   Plea, not guilty.   Trial by jury at the March term,
1894, Washington county, Tyler, J., presiding.   Verdict,
guilty, and judgment on verdict.   The respondent excepts.

The hypothetical question referred to in the opinion was as
follows :

"Q. I will make a supposition then; if cattle were slaughtered at that barn about ten or fifteen feet back from the front of it, and the entrails, and the blood, and the horns, and the bones that were thrown away, were thrown into the basement under that barn floor, and a hog pen was maintained under that floor during the hot season of the year, and there was more or less putrid flesh there and decaying matter, what would be the effect of such a condition of affairs to the health of the neighborhood, and to people passing and repassing upon that highway?

"A. I think it would be deleterious."

The respondent excepted to both the question and the answer.

*S. C. Shurtleff* for the respondent.

The common law remedy has been superseded by statutory enactment. R. L., ss. 3924, 3925; Acts of 1892, No. 82, p. 90; *State* v. *Smith*, 7 Conn. 428; *State* v. *Hyde,* 11 Conn. 541; *State* v. *Smith*, 54 Vt. 403.

*Zed S. Stanton*, state's attorney, for the state.

The hypothetical question embraced all the material facts in the case and was proper. *Bishop* v. *Spinning*, 38 Ind. 143; Rogers, Expert Tes., s. 25 and cases cited there; *Guilig* v. *State*, 66 Ind. 94; *Goodwin* v. *State*, 96 Ind. 550; *Quinn* v. *Higgins*, 53 Am. Rep. 305; *Yardley* v. *Cuthberton*, 56 Am. Rep. 218; *Gilman* v. *Strafford*, 50 Vt. 723; *Hathaway* v. *Life Ins. Co.*, 48 Vt. 335; *Johnson* v. *Castle*, 63 Vt. 452.

It is not necessary to the creation of a nuisance that the public health should be affected. Wood on Nuisances, 766, 784, 785 and cases cited there; *Brady* v. *Weeks*, 3 Barb. 157,

MUNSON, J. R. L., 3923, provides that no one shall carry on the business of butchering in a building without the

written approval of the board of civil authority, describing the building and limiting the time during which he may carry on the business; and imposes a penalty upon one who carries on the business without such approval or after the time limited. No. 82, Acts of 1892, authorizes the local board of health to abate all nuisances, sources of filth and causes of sickness; imposes a penalty for a neglect or refusal to comply with its written order in that behalf; and empowers it in case of such refusal or neglect to dispose of the nuisance at the expense of the owner or occupant of the premises. It is insisted that these provisions have superseded the common law relating to nuisances of this character, and that the offence charged in the indictment no longer exists.

An enactment which is not manifestly repugnant to the former law will not be held to repeal it, unless it revises the whole subject-matter of the former law and is evidently intended as a substitute for it. *Farr* v. *Brackett*, 30 Vt. 344; *State* v. *Smith*, 63 Vt. 201. We think the statutes relied upon come short of the requirement of this rule. The act of 1892 is confined to provisions for the abatement of nuisances; and the abatement of a nuisance is not a punishment of the crime. R. L., 3923, prohibits the business except as licensed, and prescribes a penalty for carrying it on without a license. Neither clause can be held to repeal the old law. The common law offence can exist notwithstanding the requirement that all slaughter houses be licensed, and even though the particular one complained of is licensed. The doctrine that the state cannot complain of a nuisance which results from the doing of something which it has authorized applies only when the nuisance is a necessary result of the authorized act. If a licensed business which could have been carried on without becoming a nuisance is permitted to become one, the license will not bar an indictment. When licensed, the business is legalized, if properly carried on. If not licensed, it is an offence against the statute, however it may be carried

on. If it is not licensed, and is so carried on as to be obnoxious to the rules of the common law, it is an offence against the common law as well as against the statute, and may be punished as such. If the clause which prescribes a forfeiture repeals anything, it repeals only so much of the common law as relates to the punishment. Where there is a repeal of this character, although the offender must be punished in accordance with the statute, he may be indicted under the common law. 1 Bish. Cr. Law, s. 203.

The respondent cites *State* v. *Smith*, 54 Vt. 403, in support of his claim. That was an information for obstructing an ancient water-course to the injury of the highway. The statute provided that one who injured a highway by any of certain specified acts should, as a penalty, forfeit and pay to the treasurer of the town, to be expended in repairing highways, a sum not exceeding thirty dollars, to be recovered by the selectmen in an action in the name of the town. G. S. Ch. 25, s. 70. These provisions for the punishment of the offender were absolutely inconsistent with a proceeding by information or indictment; the phraseology was thought to indicate an intention that the penalty there provided should be the only one; and it was accordingly held that if the facts brought the case within the statute the respondent could not be punished by information. In this case the statute simply prescribes a forfeiture; and all fines, forfeitures and penalties imposed by statute, unless some other method is specially provided, are to be recovered by information or indictment. R. L., 1739.

The court charged that if the jury failed to find that the odors were of such a character as to endanger the public health, the respondent should nevertheless be convicted if they found the odors were such as to be seriously offensive to the people who passed. This was correct. It is not necessary that the place be such as to endanger health; it is sufficient if it be offensive to the senses. 1 Bish. Cr. Law, s.

1073. But the court charged that it would not be enough that people could detect it; and went on to say that it must be seriously offensive. It is said that the exact meaning of this expression has not been declared by any judicial tribunal. However this may be, we think it was a choice of words well adapted to protect the rights of the respondent, and one of which he cannot complain.

It is objected that the hypothetical question asked was not based upon the evidence as detailed in the exceptions, in that it was framed without reference to whether noxious odors were emitted from the premises, and without reference to the amount of putrid flesh which remained there. We think the question substantially covers the material things which the evidence of the state tended to establish. It was not necessary to include in the question the supposition that offensive odors were produced by the condition of things assumed. The state might properly, without regard to the other evidence which tended to show the escape of odors, prove by its expert that such a condition of things would produce exhalations that would be deleterious. It is objected that the phrase "more or less," used in regard to the amount of putrid flesh, is susceptible of meaning the smallest quantity. If a very small quantity, in connection with the other conditions named, would in the opinion of the expert produce deleterious effects, the respondent certainly cannot have been injured by the failure to assume the presence of a more considerable and more definite quantity.

*Judgment that respondent take nothing by his exceptions.*