## SITTERLE, Mayor, et al. v. VICTORIA COLD STORAGE CO.

No. 8471.

Court of Civil Appeals of Texas. San Antonio. Oct. 22, 1930.

Rehearing Denied Dec. 17, 1930.

J. L. Dupreè and C. C. Carsner, both of Victoria, for appellants.

Edw. C. Thomas and J. W. Ragsdale, both of Victoria, for appellee.

SMITH, J.

This is an appeal from a perpetual injunction restraining the city of Victoria and its officials from enforcing the following provision of a city ordinance, which the trial court held to be void, as unconstitutional:

"That no slaughter house yards, grounds or other slaughtering establishment shall be used within the City limits of this City in the slaughtering of any cattle, hogs, sheep, goats, turkeys, chickens, ducks, geese and other poultry and all such places, premises, improvements and buildings or establishments that may be so used are hereby declared nuisances, and the author or keeper of any such premises, yards, buildings or other improvements shall be guilty of causing, maintaining and keeping a nuisance, and upon conviction shall be punished by a fine of not less than Ten nor more than Fifty Dollars, and each and every day such premises, yards, buildings and improvements so used, shall constitute a separate offense against the provisions of this Ordinance, and the author or keeper of same may be prosecuted, convicted and fined in the sum of not less than Ten nor more than Fifty dollars; and said nuisance may be removed in the manner prescribed in Section 11 of this Chapter."

At the time the ordinance was enacted and became effective, the Victoria Cold Storage Company, as stated in appellee's brief, was operating, within the Victoria City limits, "a business of buying, selling, shipping, marketing and slaughtering turkeys, geese, duck and other fowl, and the packing and storage of same in cold storage and conducting a general cold storage plant and business in the City of Victoria, Victoria County, Texas, and was so conducting and operating same long prior to the passage of said ordinance * * * with the common knowledge and apparent consent of the then duly constituted authorities of said city."

After the adoption of the ordinance, appellants undertook to enforce its penal provisions by arresting and prosecuting appellee's managers and employees, as the "authors and keepers" of appellee's slaughter house. Being convicted in the corporation court, the accused appealed to the county court, where, pending the appeal, appellee, their employer, sought to halt the prosecution until the validity of the ordinance could be determined. Upon this doubtful foundation rests the jurisdiction of the county court, which granted a temporary injunction restraining the enforcement of the ordinance, and subsequently, in a hearing upon the merits, rendered judgment perpetuating said injunction.

Refusing to hear any evidence in the case touching upon the questions of the location or manner or effect of operating appellee's slaughter house, or of the reasonableness or necessity of the ordinance, the trial judge held point blank that the enactment was void upon its face and by its own terms, as a matter of law. The correctness of that holding is the sole question presented in the appeal. It is important to keep it in mind that the trial court refused to hear any testimony upon the issues of the necessity or reasonableness of the ordinance, but determined those issues solely upon the language and provisions of the ordinance.

The city of Victoria is a municipal corporation operating under the provisions of the so-called home rule amendment to the state Constitution (article 11, § 5), under which the powers of such corporation are by implication enlarged to embrace all powers included in its charter and not "inconsistent with the Constitution of the state, or of the general laws enacted by the Legislature of this state." Le

Gois v. State, 80 Tex. Cr. R. 356, 190 S. W. 724; Miller v. Uvalde Co. (Tex. Civ. App.) 20 S.W.(2d) 403.

In section 19, art. 1175, Rev. St. 1925, the so-called Enabling Act putting said provision of the Constitution into effect, it is provided that cities operating under said act (which includes the city of Victoria) shall have the power to "define all nuisances and prohibit the same within the city"; section 34, art. 1175: "To enforce all ordinances necessary to protect health, life and property, and to prevent and summarily abate and remove all nuisances and to preserve and enforce the good government, order and security of the city and its inhabitants;" section 9, art. 1015: "To direct the location and regulate the management and construction of, restrain, abate and prohibit within the city limits, slaughtering establishments * * * and all other establishments or places where any nauseous, offensive or unwholesome business may be carried on." And in section 11, art. 1015, the further power is given "to abate and remove nuisances and to punish the authors thereof by fine, and to define and declare what shall be nuisances and authorize and direct the summary abatement thereof; and to abate all nuisances which may injure or affect the public health or comfort in any manner they may deem expedient." These provisions of article 1015 were carried forward into, and became a part of, the city charter of Victoria, and under the powers thus granted and claimed the governing body of the city enacted the ordinance in question, as quoted above. Thus arises the controlling question in the case, Has the city of Victoria the power, under the constitutional, statutory, and charter provisions mentioned, to pass and enforce the ordinance in question in so far as it relates to the slaughtering of "turkeys, chickens, ducks, geese and other poultry?"

■ Under the general grant embraced in section 11, art. 1015, and section 19, art. 1175, the city of Victoria was given the broad powers to "define and declare what shall be nuisances," and to "prohibit," "remove," and "summarily abate" such nuisances so denounced. It has been held by our Supreme Court and Court of Criminal Appeals that this grant, broad and apparently all-inclusive as it is, does not confer upon municipal governments upon which it was intended to operate the express power to arbitrarily declare any specific business, calling, project, or act to be a nuisance, and prohibit or abate it as such. Crossman v. Galveston, 112 Tex. 303, 247 S. W. 810, 26 A. L. R. 1210; Ex parte Harris, 97 Tex. Cr. R. 399, 261 S. W. 1050, 32 A. L. R. 1356. This restriction upon the power thus granted is technically important in the construction of municipal ordinances, although, as a practical matter, under the deci-

sions cited, as well as Stockwell v. State, 110 Tex. 550, 221 S. W. 932, 12 A. L. R. 1116, there is no difference in the application of the rule that, in any event, neither the Legislature nor any municipality has the power to enforce a statute or ordinance defining and denouncing a particular thing or act as a nuisance, unless it is in fact so, in the opinion of the courts.

■ It seems that the true rule is this: That under a general grant, such as our highest courts hold this to be, the municipality has no power to arbitrarily declare and denounce a particular thing or act to be a nuisance, unless it is a nuisance per se, or as at common law; that a municipal ordinance, passed under a general grant of authority to define and prohibit nuisances, which declares and denounces as a nuisance that which is not such per se or as at common law, is invalid, unless it can be shown that the thing denounced is in fact a nuisance because of conditions existing in the municipality affected; that in such case the question of nuisance vel non becomes one of law, to be determined by a court from facts ascertained and determined by the jury or court, as the case may be. The validity of the ordinance must rest upon this determination. 2 Dillon, Mun. Corp. (5th Ed.) §§ 589–591, 690; 2 McQuillan, Mun. Corp. §§ 725, 901–903; 7 McQuillan (Supp.) §§ 725–730; Joyce, Law of Nuis. § 84; 19 R. C. L. pp. 805, 810, §§ 112, 113; 20 R. C. L. p. 389, § 12; 43 C. J. pp. 300, 307, §§ 315, 318; Austin v. Cemetery Ass'n, 87 Tex. 330, 28 S. W. 528, 47 Am. St. Rep. 114; Stockwell v. State, 110 Tex. 550, 221 S. W. 932, 12 A. L. R. 1116; Houston & T. C. R. Co. v. Dallas, 98 Tex. 396, 84 S. W. 648, 70 L. R. A. 850.

■ Because of their inherent nature, slaughter houses are peculiarly subject to control under the general police power. It is held by quite respectable authorities that they are prima facie nuisances (Joyce, Law of Nuis. § 126 et seq.); that ordinances (enacted under general powers) regulating or excluding them from specified limits or localities "have been uniformly upheld" (19 R. C. L. pp. 819, 820, § 124); that municipalities may by ordinance declare them to be nuisances and exclude them, as such, from the corporate limits, where they are shown to be such in fact (43 C. J. p. 319, § 340); that a slaughter house may become a nuisance merely by reason of its locality (46 C. J. p. 723, § 274); that the general power to "declare what shall be a nuisance and to abate the same" granted to a municipal corporation "is ample to prohibit slaughter houses within its territory" (3 McQuillan, Mun. Corp. § 908, 7 Id. Supp. 908); that "it has been held that slaughter-houses belong to the class of occupations which have a tendency to affect the public health, and a determination by the municipality, under authority to declare and abate nuisances, that

they are nuisances and shall be prohibited within the city limits, is an exercise of legislative discretion which is regarded as final and binding upon the courts." 2 Dillon (5th Ed.) § 691; that a slaughter house "located in a thickly settled community is deemed prima facie a nuisance," and "slaughter houses located in the midst of populous districts have been regarded generally as nuisances on account of the noxious vapors and noisome smells and stenches emitted therefrom." Reichert v. Geers, 98 Ind. 73, 49 Am. Rep. 736; Bushnell v. Robeson, 62 Iowa, 540, 17 N. W. 888; Rhoades v. Cook, 122 Iowa, 336, 98 N. W. 122; Seifried v. Hays, 81 Ky. 377, 50 Am. Rep. 167; Villavaso v. Barthet, 39 La. Ann. 247, 1 So. 599; Perrin v. Crescent City Stockyard & Slaughterhouse Co., 119 La. 83, 43 So. 938, 12 Ann. Cas. 903; Woodyear v. Schaefer, 57 Md. 1, 40 Am. Rep. 419. Compare Fay v. Whitman, 100 Mass. 76; Catlin v. Valentine, 9 Paige (N. Y.) 575, 38 Am. Dec. 567; Brady v. Weeks, 3 Barb. (N. Y.) 157; Portland v. Cook, 48 Or. 550, 87 P. 772, 9 L. R. A. (N. S.) 733; Smith v. Cummings, 2 Pars. Eq. Cas. (Pa.) 92; Pruner v. Pendleton, 75 Va. 516, 40 Am. Rep. 738; Wright v. Ulrich, 40 Colo. 437, 91 P. 43; Bishop v. Banks, 33 Conn. 118, 87 Am. Dec. 197; Minke v. Hopeman, 87 Ill. 450, 29 Am. Rep. 63; Moses v. State, 58 Ind. 185; Dennis v. State, 91 Ind. 291; Zugg v. Arnold, 75 Mo. App. 68; Babcock v. New Jersey Stock Yard Co., 20 N. J. Eq. 296; Taylor v. People, 6 Parker Cr. R. (N. Y.) 347; Peck v. Elder, 5 N. Y. Super. Ct. 126; State v. Woodbury, 67 Vt. 602, 32 A. 495; Wilcox v. Henry, 35 Wash. 591, 77 P. 1055; Grant v. Rosenburg, 112 Wash. 361, 192 P. 889, 196 P. 626; Hughson v. Wingham, 120 Wash. 327, 207 P. 2, 27 A. L. R. 327; Rex v. Cross (England) '31 Revised Rep. 684.

These observations are made and authorities cited, not for the purpose of determining this appeal, but for the information of the trial court and counsel upon another trial.

■■ We hold that, because of the nature of the business sought to be prohibited by the ordinance in question and because of the legal but rebuttable presumption that the ordinance is valid (Austin v. Cemetery Ass'n, supra), the trial court erred in holding the ordinance to be void upon its face, as a matter of law. The question of the necessity, reasonableness, and validity of the ordinance is one of law, to be determined by the court from whatever pertinent evidence may be adduced by the parties, for which purpose the judgment is reversed and the cause remanded.

## On Motion for Rehearing.

A closer analysis of the case, induced by appellee's able and earnest motion for rehearing, impels further discussion and conclusions upon the case made.

■ The powers granted in the Enabling Act to municipalities of the class embracing the city of Victoria include the express power to "abate and prohibit within the city limits, slaughtering establishments." Rev. St. 1925, art. 1015, § 9. This grant was carried forward, by identical language, into the charter of said city. By this process the Legislature delegated to the municipality the express power to prohibit and abate the operation of slaughtering establishments within the corporate limits of the city, which grant carried with it the necessarily implied power to enforce the express power by appropriate penalties.

■ The power being expressly granted by the Legislature, the time for assuming and the manner of exercising it rest within the sound discretion of the governing board of the municipality. Under such authority, the board may determine the questions of the necessity of exercising the power, and of the method of giving effect thereto, and its determination of those questions is final and conclusive, and may not be revised by the courts, in the absence of clear and conclusive evidence that the board had acted arbitrarily and without reason. And in such situation the burden rests upon those aggrieved to make such showing. These rules are too well settled to require the citation of authorities other than those cited in the original opinion in this case.

With this grant of power at hand, it devolved upon the city council of Victoria to determine when conditions in the municipality called for the exercise of the power. It was for the council to determine if the population had become so distributed over the territorial area of the city, and conditions within the city limits had become such, that the operation of slaughter houses therein would menace the health and comfort of the public. The power to resolve such questions had been expressly delegated to the city, and the voters of the city had selected the members of the council as being specially fitted to determine when and in what manner that power should be exercised. The governmental functions necessary to carry out the grant are administrative; they rest peculiarly within the province of city councils; and the courts have no power to usurp those functions and set themselves up as better qualified than city councils to pass upon such questions.

■ In this case the city council, acting under express legislative grant, resolved the question of necessity in favor of assuming the power thus granted, whereupon it became the duty of the council to prohibit and abate by appropriate ordinances, as it did, the operation of slaughtering establishments within the city limits, and to prescribe appropriate penalties for violations of the ordinances. The presumption of law is that the council acted

timely and reasonably, and its action cannot be questioned by the courts, unless it appears conclusively that it acted arbitrarily and without the semblance of reason.

In this view of the case it is perhaps true that the declaration in the ordinance in question that slaughtering establishments within the city limits were nuisances was surplusage, for clearly under the express grant the council had the authority to prohibit and abate such concerns without resort to the use of that technical designation. That declaration certainly could not lessen the force of the prohibition, even if it might jeopardize the effectiveness of the penalty prescribed, which is not a question for decision here. Be that as it may, however, we conclude that the council had the express power to prohibit and abate slaughter houses in the city limits, and, when they had expressly exercised that power, they were authorized to declare such operation to be a nuisance under the express legislative and charter powers to define and prohibit "all nuisances," to "prevent and summarily abate and remove all nuisances" (article 1175), and to "abate and remove nuisances and punish the authors thereof by fine, and to define and declare what shall be nuisances and authorize and direct the summary abatement thereof; and to abate all nuisances which may injure or affect the public health or comfort in any manner they may deem expedient." Article 1015.

It must be remembered that the council was not dealing with ordinary business establishments, such as grocery, hardware, furniture, or dry goods stores, but with slaughter houses, which have inherent qualities rendering them peculiarly subject to police regulations and prohibitions.

With these enlargements we adhere to the holdings in the original disposition that the ordinance is valid upon its face, and may be stricken down through the courts only by a clear and conclusive showing that the city council has exceeded its discretion under expressly granted powers, and has acted arbitrarily and without reason.

We have gone this much further into the case in deference to appellee's very forceful motion for rehearing, which must be overruled.