**CITY OF DALLAS et al. v. TAYSTEE BAKING CO.**

No. 5446.

Court of Civil Appeals of Texas. Amarillo.
June 8, 1942.

Rehearing Denied June 29, 1942.

H. P. Kucera, A. J. Thuss, Chas. E. Long, Jr., and R. L. Dillard, Jr., all of Dallas, for appellants.

Gerald C. Mann, Atty. Gen., and George Barcus and Walter R. Koch, Asst. Attys. Gen., amici curiae.

Webster Atwell, of Dallas, for appellee.

JACKSON, Chief Justice.

On September 20, 1941, the City of Dallas, a municipal corporation, acting by its legally authorized officers, filed in the corporation court of said city complaints against the Taystee Baking Company, a corporation engaged in baking and selling bread in Dallas. The charge was selling on the market loaves of bread not within the legal tolerance or variance prescribed by the statute of the State and the ordinance of the city. The statute and ordinance provide that the variance in the weight of a loaf of bread shall not exceed one ounce per pound over or under the legal standard within a period of twenty-four hours after baking.

In 1921 the Legislature enacted a law sponsored by the Texas Bakers Associa-

688

tion which is under the title of Public Health, and Rule 5 of Article 719, Vernon's Annotated Criminal Statutes, Penal Code, Volume 2, provides: "Bread to be sold by the loaf made by bakers engaged in the business of wholesaling and retailing bread, shall be sold based upon any of the following standards of weight and no other, namely: a loaf weighing one pound or 16 ounces, a loaf weighing 24 ounces or a pound and a half, and loaves weighing two pounds or 32 ounces, and loaves weighing three pounds, or some other multiple of one pound or 16 ounces. These shall be the standard of weight for bread to be sold by the loaf. Variations, or tolerance, shall not exceed one ounce per pound over or under the said standard within a period of 24 hours after baking."

Shortly after the enactment of this statute the City of Dallas duly passed Section 16 of its Weights and Measures Ordinance, which is as follows:

"It shall be unlawful for any person by himself or by his employee or agent, or as the employee or agent of another to manufacture for sale, sell, offer or expose for sale any bread otherwise than by the following units of weight: One (1) pound net, one and one-half (1½) pound net, or multiple of one (1) pound net. When twin or multiple loaves are baked the weights specified in this ordinance shall apply to each unit of the twin or multiple loaf. When bread is sliced prior to sale, it shall be wrapped and the weights specified in this ordinance shall apply to each package.

"The variation and tolerance allowed in the weight of bread shall not exceed one (1) ounce per pound, over or under, on each individual loaf, within said 24 hour period; and the variation and tolerance allowed on 10 loaves of bread, made by the same manufacturer when weighed collectively, shall not exceed one-fourth (¼) ounce per pound in deficiency.

"All bakery products wrapped prior to sale, shall have the net weight plainly and conspicuously marked on the outside of each package."

Before the trial of any of the cases filed in the corporation court of the city the Taystee Baking Company on September 22, 1941, made application to the 116th District Court of Dallas County, Texas, for a writ of injunction to enjoin the defendants, the city and its officers, from interfering with

the plaintiff in baking bread, offering for sale or selling loaves of bread wrapped and marked 16 ounces if such loaves weighed without the wrapper more than 17 ounces, to restrain defendants from threatening retailers, the purchasers of such loaves, and from prosecuting or threatening to criminally prosecute the plaintiff. For the injunctive relief sought plaintiff urges that Rule 5 of Article 719 of the Texas Penal Code, and Section 16 of the Weights and Measures Ordinance of the City of Dallas, should be construed to allow plaintiff to offer for sale and sell loaves of bread plainly marked 16 ounces although said loaves weighed in excess of 17 ounces, and if the statute and ordinance are not so construed then plaintiff contended the statute of the state and the ordinance of the city are unconstitutional and void because unreasonable, arbitrary, oppressive, cannot be readily complied with and do not protect the public from fraud or harm; that it had recently installed new equipment at an expense of $5,500 and on account of the acts of the officers had lost the sale of five or six thousand pounds of bread.

The defendants urged special exceptions and alleged as a defense that the plaintiff was violating the statute of the state and the ordinance of the city, both of which were valid, reasonable and enacted for the protection of the public; that the loaf plaintiff was selling was larger than the former 16 ounce loaf it baked and marketed in the city and with this enlarged loaf it sought to deceive the public; that with the modern devices and machinery used by plaintiff it could meet the weight requirements of the statute and ordinance and the failure to so do was on account of carelessness and negligence in the operation of its plant; that the maximum limitation was no less important in the production and sale of bread than the minimum limitation.

On September 25, 1941, the case came on for trial, all parties announced ready and agreed the cause should be submitted to the court on its merits for the purpose of determining whether a permanent injunction should be granted plaintiff as sought or it should be refused. The court after hearing the evidence found that plaintiff's loaves of bread wrapped and marked 16 ounces, although containing over 17 ounces, which was over the maximum weight allowed, do not in any wise deceive the public and the variance or

tolerance provided in the state statute and the city ordinance of one ounce excess above the standard weight of 16 ounces is arbitrary, unreasonable and oppressive and not readily complied with; that plaintiff was guilty of no intentional fraud and the public was not protected by the excess weight provision of the statute and ordinance. On these findings he ordered the issuance of a permanent injunction against the defendants enjoining them from enforcing the excess provision of the penal code and the ordinance of the city against plaintiff. From this judgment the city and its officers, herein called appellants, prosecute this appeal.

The appellants by several assignments, all of which may be considered together, urge as error the action of the court in granting a permanent injunction against the city enjoining the enforcement of Rule 5 of Article 719 of the Penal Code and Section 16 of the Weights and Measures Ordinance of the city against the appellee because under the record the court erroneously held the law as contained in the statute and ordinance of the city was unfair, unreasonable, arbitrary, oppressive, not readily complied with and that plaintiff was guilty of no fraud and the law afforded no protection to the public.

We think it is settled and is apparently conceded by appellee that the State Legislature had the authority to enact a statute to regulate and prescribe the weight of a loaf of bread to be marketed in the City of Dallas. The provision of the charter of the City of Dallas authorizing the enactment of such an ordinance reads as follows:

"Chapter 2. Powers of the City.

"Section 5. The City of Dallas, as such body politic and corporate * * * may provide for the inspection of weights and measures and fix standards of weights and measures; may provide for the regulation of bakeries and prescribe the weight, quality and price of bread manufactured or sold in the City of Dallas; * * *"

Clara Allion, Plaintiff in Error, v. City of Toledo, 99 Ohio St. 416, 124 N.E. 237, 6 A.L.R. 426 and Annotation 429; Mathias Schmidinger, Plaintiff in Error v. City of Chicago, 226 U.S. 578, 33 S.Ct. 182, 57 L.Ed. 364; City of San Antonio v. Zogheib, 129 Tex. 141, 101 S.W.2d 539.

This brings us to a consideration of the question as to whether the statute of the state and the ordinance of the city are unreasonable, arbitrary, oppressive and therefore legally unenforceable.

The parties agreed in open court that the appellee is a foreign corporation with a permit to do business in Texas and is engaged in baking and selling bread to the wholesale dealers in the City of Dallas; that the appellants are the City of Dallas and its officers; that appellee has expended $5,500 recently to equip its baking plant to produce the loaf of bread which weighs over 17 ounces or over 18 ounces without the wrapper, is putting it on the market in sealed wrappers and such packaged loaf is plainly marked "16 ounces"; that the bread is sanitary, complies with all the health regulations of the City of Dallas and with all other statutory ordinances, rules and regulations except the weight laws thereof about which this litigation has arisen. The overweight loaf is marked 16 ounces, wrapped, and is 11 inches long by 4 inches wide. The 24 ounce loaf is 13 inches long by 5 inches wide, wrapped and plainly marked 24 ounces. Prior to the introduction to the market in Dallas of the overweight 16 ounce loaf, the loaf marketed by appellee was 9¼ inches long by 5 inches wide. On September 20, 1941, the city filed complaints against appellee for producing and marketing a 16 ounce loaf of bread which in fact weighed 18 ounces or over, and such complaints were properly drawn and filed in the corporation court. The city through its duly authorized officers notified certain retail stores not to sell bread of appellee labeled 16 ounces which weighed in excess of 17 ounces without the wrapper.

The appellee introduced in evidence the testimony of Mr. Golman, who owns and operates two bakeries in Dallas completely equipped with the most modern machinery and devices, Mr. Vanderpool, who owns and operates a bakery in Tyler, Texas, equipped with modern machinery and devices and produces about 100,000 pounds of bread per week, and Mr. Weinstein, who operates a bakery in Dallas by hand and produces about 6,000 pounds of bread per day. These gentlemen had been baking bread for years and each was qualified to give his opinion and each testified that you could not readily bake a 16 ounce loaf of bread and not get below the minimum of 15 ounces or over the maximum of 17 ounces, the tolerance allowed by law. It was impossible, in their judgment, to main-

tain the loaves within those limits all the time and that the tolerance should be from 2 to 3 ounces below the standard and 2 to 3 ounces above the standard prescribed in the statute and ordinance. They stated that there is a human factor which makes it impossible to keep within the legal tolerance continuously. Mr. Weinstein gave as a reason that they worked men 8 to 9 hours and these men could not for that length of time maintain their efficiency to such a degree as to stay within the legal variation, but what per cent of the loaves were not within the legal tolerance none of these gentlemen estimated.

Mr. Fox, the vice president of the Taystee Baking Company which operates 32 bakeries in the United States, after qualifying from long and extensive experience, testified that appellee's plant in Dallas was equipped with the latest devices and best machinery to be had. He described in detail the method of purchasing and treating the flour, mixing it with other ingredients, making the dough, treating the dough, passing the dough through the mechanical divider, the operation of the divider, passing the divided dough into the rounder, then into the prover, thence into the molder, placing the dough into the oven for baking, into the cooling room after baking, its slicing and wrapping and its delivery upon the counters of the retail stores for sale. He stated the appellee employed the most efficient machine operators to be found, but it had never been able to stay within the legal tolerance or variance prescribed by the statute and ordinance; that the loaf wrapped and marked 16 ounces ran over the maximum of 17 ounces but was not produced or sold with any intention of deceiving or defrauding the public or the purchasers of its bread; that the 24 ounce loaf was 2 inches longer and one-half inch wider than the loaf marked 16 ounces; that men from the weights and measures department of the city visited the appellee's plant periodically but it had never been criticised for a loaf weighing over the maximum prescribed by law; that he was in favor of a tolerance of 3 ounces above the standard, which was 16 ounces, but no minimum below the standard; that the law was in effect when the appellee began baking in Dallas in 1928; and that you cannot tell the weight of a loaf of bread by looking at it. The witness was shown 7 loaves of bread and estimated that their weight

varied from 15 to 27 ounces; that the purpose of these different weights was to deceive the public and if 7 different purchasers bought one each of the 7 loaves each purchaser would get a different amount of bread. He was requested to, and did, weigh the 7 loaves, and the scales disclosed that they varied from 16⅞ ounces to 19¼ ounces. This forcibly illustrates the inability to determine the weight of a loaf of bread by sight only; that appellee no longer sells in Dallas the 16 ounce loaf that it marketed there before obtaining new baking pans and producing the overweight loaf marked 16 ounces; that the former loaf was sold for 7¢ wholesale and 8¢ retail; that the present loaf was sold for 8¢ wholesale and 9¢ retail; that in ascertaining the inability of bakers to comply with the legal tolerance the human element must be considered; no matter what the operator did, there are times when the divider will not comply with the guarantee of its makers to cut a loaf within one-half ounce of the weight desired since the human element enters into the production of bread from the time the flour is purchased until the loaf is placed on the market; that a loaf that weighs 14 ounces contains the same food value per ounce as a heavier loaf.

A. M. Cozby, who occupied the official position with the city of deputy sealer of weights and measures, testified in behalf of the appellant that on September 15, 1941, he weighed 85 loaves of bread baked the previous night by the appellee, each of which loaves was wrapped and marked 16 ounces; that the loaves varied in weight from a minimum of 17¾ ounces to a maximum of 19¼ ounces. Note that each of the 85 loaves weighed over the maximum of 17 ounces permitted by law, however, the difference in weight between the lightest loaf and the heaviest loaf was less than 2 ounces, the variation or tolerance permitted by the statute and city ordinance. If the minimum allowed by law had been 17¾ ounces and the maximum had been 19¼ ounces, the entire 85 loaves would have been within the legal tolerance and we can conceive of no reason, if the variation could be held within 2 ounces in baking 85 loaves the lightest of which was 17¾ ounces and the heaviest of which was 19¼ ounces, why the tolerance between 15 and 17 ounces, which was legal, should be held arbitrary, oppressive and unreasonable. On January 7, 1941 this

witness weighed 181 twenty-four ounce loaves of bread produced by appellee and only 5 of these loaves were in violation of the legal tolerance.

The certainty of the facts shown by the weights of these 85 loaves and the weights of these 181 loaves, in our opinion, not only controverts and refutes the opinion testimony given in behalf of appellee that a tolerance of 2 ounces renders the law unreasonable, but also destroys the probative force of the testimony of such witnesses to the effect that the 2 ounce variation permitted by law renders the law so burdensome that a compliance therewith cannot be had.

On December 17, 1940, an inspection of the Manor Baking Company disclosed that from 12½% to 25% of the bread it was marketing was not in compliance with the law. The company was advised of the condition, another inspection made and some improvement was shown and after further adjustments of the machinery again on January 27, 1941, the city inspected the plant and of the 30 loaves tested by weight each was within the legal tolerance. On January 30, 1941, twenty-five 1½ pound loaves of the A. & P. Bakery in Dallas were weighed and were found to be within the law. On March 7, 1941, 25 loaves from Mrs. Baird's Bakery were weighed and were within the tolerance. On June 30, 1941, 25 loaves of the Safeway Baking Company were scaled and were within the law. On March 1, 1941, 25 loaves from the Scottino Bakery were weighed and failed in a few loaves to meet the minimum requirement. This company was again tested on August 13th and the bread still was without the law but the company immediately readjusted its operations and on August 15th another test revealed that of 150 loaves weighed but one was outside of the legal tolerance. The city's inspection of other bakeries was introduced. Some were entirely within the law with each loaf. Some had a percentage of over or under the requirement but on adjustment of the plants the weight of the bread marketed was improved to the extent that the percentage of loaves not within the tolerance was insignificant.

The city introduced in evidence the testimony of Mr. Braden, Mr. Landry, Mr. Eilenberger, Mr. Blatt, Mr. Hardy and Mr. Williams, all of whom owned and operated bakeries in Dallas except Mr. Eilenberger who owned and operated a bakery in Palestine, Texas and Mr. Hardy who owned and operated a bakery in Gainesville, Texas. The qualifications of these witnesses from actual experience and supervision of the baking business were unquestioned. Some of their bakeries were operated by hand and some were equipped with the latest and most modern machinery and devices. Their production and sales varied from 200 pounds per day to a quarter million pounds per week and the consensus of the opinion of all these witnesses is that the law which provides that the variation or tolerance in the weight of a loaf of bread should not exceed one ounce per pound under and one ounce per pound over the standard is reasonable and can be complied with; that their respective plants may sometimes put out a loaf below the minimum or above the maximum weight, but when this occurs it is due to the fault of the plant, inefficient operation, carelessness or negligence of the employees. The city also placed on the stand W. S. Bussey, Chief of the Weights and Measures Division of the State Department of Agriculture, who testified that he traveled over the state and visited every part thereof in this duty of supervising weights and measures; that he has been so engaged since January 10, 1931; that he has come into contact with various bakeries, both manual and mechanical; that he has checked the products of such bakeries with reference to weight; that he has done this work either as assistant or as chief of the department and his experience has been that the bread marketed by the bakers of the state is generally within the tolerance of the law.

The record shows that the purchaser was paying for the overweight in the loaf which exceeded the maximum legal tolerance.

In determining whether Rule 5, Article 719 of the Penal Code and Section 16 of the Ordinance of the City of Dallas are unconstitutional because unreasonable, arbitrary and oppressive, we consider it well to state a few well settled rules of construing the reasonableness or unreasonableness of statutes by which we should be guided.

The Legislature is presumed to have given careful consideration to the constitutionality of a statute before its enactment, and this presumption prevails until clearly overcome by evidence. This law was sponsored by the State Bakers

Association. State v. Hogg et al., 123 Tex. 568, 72 S.W.2d 593. The burden of showing the state or municipality has enacted a statute or ordinance that is unreasonable is upon the party asserting that such law is arbitrary and oppressive. Sitterle, Mayor, et al. v. Victoria Cold Storage Co., Tex.Civ.App., 33 S.W.2d 546.

In reaching our conclusion as to the validity of the statute and ordinance, we are not concerned with the wisdom of the law or the want of wisdom nor with the burden required to comply therewith. Neither is it within the function of the judiciary to determine whether or not the law operates fairly or unfairly, nor the inconsistency its enforcement may involve. Vaughan et al. v. Southwestern Surety Ins. Co., 109 Tex. 298, 206 S.W. 920; State v. Pioneer Oil & Refining Co. et al., Tex. Com.App., 292 S.W. 869.

In Sproles et al. v. Binford, 286 U.S. 374, 52 S.Ct. 581, 585, 76 L.Ed. 1167, 1179, Chief Justice Hughes of the Supreme Court of the United States says: "When the subject lies within the police power of the state, debatable questions as to reasonableness are not for the courts but for the Legislature, which is entitled to form its own judgment, and its action within its range of discretion cannot be set aside because compliance is burdensome."

To overcome the presumption of the constitutionality of the law passed by the Legislature or the ordinance passed by the city, the appellee relies exclusively upon the opinion of experts which, because of less certainty, does not carry the force of unquestioned proof and the certainty of the facts shown by the actual weights of so many pounds of bread from various bakeries, the correctness of which were unquestioned, all within the legal tolerance or if without, by adjustment were brought within the legal variation, together with the corroboration of the expert testimony of numerous other bakers equally fitted and qualified to testify, who gave it as their opinion that the law was reasonable, not arbitrary or oppressive, convinces us that the appellee failed to discharge the burden of proof imposed upon it by law to establish that the statute and ordinance were so unreasonable as to be incapable of conforming thereto.

There is some divergence in the decisions in different jurisdictions relative to fixing a standard and prohibiting the marketing of a loaf of bread exceeding in weight the maximum fixed in the law, but we are in accord with the announcement of the law by Mr. Justice Butler of the Supreme Court of the United States in P. F. Petersen Baking Company v. Bryan, 290 U.S. 570, 54 S.Ct. 277, 278, 78 L.Ed. 505, 509, 90 A.L.R. 1285, as follows: "The classes of loaves being made for sale and distributed there include those being sold as one-half pound, a pound, a pound and a quarter, a pound and a half. The mere prescribing of a minimum weight for each class reasonably may be deemed not effective for there might be made such intermediate sizes as would permit deception and fraud. The danger is illustrated by the twenty ounce loaf being made by appellants. The statute prohibits it, undoubtedly for the reason that its weight is only four ounces more than the pound loaf and four ounces less than the pound and a half loaf. Unquestionably there are adequate grounds for prohibiting a loaf of that size. The fixing of both maximum and minimum weights for each class fairly may be deemed appropriate and necessary. If not too low, there is no support for the claim that the maximum is arbitrary or discriminatory."

See also State v. Gladstone, 112 Vt. 233, 22 A.2d 490.

We think the testimony shows without substantial contradiction that where there is a failure to produce and market bread by a bakery within the tolerance or variation allowed by law it is due to faulty or inefficient operation, carelessness or negligence somewhere in the process between the purchasing and conditioning of the flour and other ingredients and the completion of the finished product for the market.

In P. F. Petersen Baking Company v. Bryan, supra, the same eminent justice says: "It is not shown that the prescribed tolerances are unreasonable or that the statute and regulations operate to prescribe punishment in the absence of fault. The lower court found, and the evidence warrants the finding, that appellants and other bakers readily may comply with the prescribed weights and tolerances. It is therefore to be presumed that in the absence of fault or negligence, violations will not occur. The facts plainly distinguish this case from [Jay] Burns Baking Co. v. Bryan [264 U.S. 504, 44 S.Ct. 412, 68 L.Ed. 813, 32 A.L.R. 661]."

We are convinced that under the record the testimony is entirely insufficient to support the granting of a permanent injunction by the court but should this be error, an analysis of the evidence shows such a great preponderance thereof against the conclusions of the court that we believe to avoid injustice it is the duty of this court under the facts to set aside the judgment of the trial court, which is hereby ordered. Texas Employers Insurance Ass'n v. Allen, Tex.Civ.App., 140 S.W.2d 897.

The judgment of the trial court is reversed and the injunction dissolved.